UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CRISTOBAL GOMEZ-CORTES,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

CASE NO. 2:26-cv-03063-GJL

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Cristobal Gomez-Cortes is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On August 27, 2026, Petitioner, through counsel, filed a habeas corpus Petition under 28 U.S.C. § 2241, seeking immediate release. *Id.* Respondents include Bruce Scott (Warden of the NWIPC) and Markwayne Mullin (U.S. Department of Homeland Security ("DHS") Secretary).[1] The Petition is fully briefed. Dkts. 1, 5, 10.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **DENIES** the Petition.

[1] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 3.

## I. BACKGROUND

Petitioner is a native and citizen of Mexico, who entered the United States as a child in 2003. Dkt. 1. Petitioner has been detained since June 17, 2026, and it is undisputed that Petitioner's current detention is government by the discretionary detention scheme in 8 U.S.C. § 1226(a). *See* Dkt. 5. Consistent with the statutory requirements of that scheme, Petitioner requested a bond redetermination hearing before an Immigration Judge ("IJ"). Dkt. 1 at 3.

On August 10, 2026, Petitioner received a bond hearing before IJ John C. Odell. Dkt. 1 at 4; Dkt. 8-5; Dkt. 14-1. In advance of the hearing, Petitioner submitted evidence in support of his request for release. Dkt. 1 at 3; Dkt. 8-4. Among other things, Petitioner's submissions included tax records, submissions from his prospective United States Citizen sponsor, proof of residence, and numerous letters of support from his family and community. *Id.* The government's evidentiary submissions included a DHS I-213 Form. Dkt. 8-2.

The parties submit no evidence or allegations concerning what occurred during the bond proceedings, and no neutral contemporaneous record of the proceedings was created or made available for the Court's review. *See* Dkt. 14.

Following the bond proceedings, IJ Odell denied bond and issued a written bond decision on a checkbox form marking the following:

> [X] ORDERED that the request for a change in custody status be denied. No bond.
>
> [X] Respondent has not shown that he is not a Danger to Community or a Flight Risk.
>
> * * *
>
> [X] OTHER: Conditional release is: denied.
>
> [X] OTHER: Ability to pay considered.

Dkt. 8-5 at 2. The checkbox order does not include any other reason, explanation, or discussion of the bond denial decision or the evidence upon which it rested. *Id.*

Although the order lacked further explanation, the IJ did prepare a written memorandum of his decision. Dkt. 14-1. In the written memorandum, IJ Odell outlined the procedural background for Petitioner's case, the applicable law, and evidence admitted into the record at the bond hearing. *Id.* at 1–2. The IJ then summarized the facts and circumstances of Petitioner's case and the reasons supporting his ultimate bond denial decision:

> Respondent is a 27- year-old native and citizen of Mexico. Respondent last entered the United States on an unknown date without admission or parole. In February of 2019, Respondent was arrested in Medford, Oregon, for possession of cocaine. In October 2019, Respondent was arrested in Medford, Oregon, for assault in the fourth degree (domestic violence), harassment, interfering with a police officer, unauthorized use of a motor vehicle, reckless driving, and reckless endangering. On September 8, 2025, Respondent was arrested for strangulation. On May 13, 2026, Respondent was arrested in Medford, Oregon, for reckless driving, reckless endangering, and driving under the influence (DUI).
>
> At Respondent's bond hearing, Respondent stated through counsel that he entered the United States in 2003. He is not married, he has no children, and his parents have no immigration status in the United States. However, Respondent has 2 United States citizen brothers. Respondent's only application for relief from removal is his Form 1-589 for asylum and related protections. Respondent attended school in the United States for 12 years, but did not graduate. Respondent works at a fast-food restaurant, but he does not have work authorization. Respondent was previously granted Deferred Action as a Childhood Arrival (DACA), but it was not renewed because of his criminal record. Respondent stated that his cocaine possession charge in 2019 was dismissed. However, he admitted that he used cocaine in the United States is 2019 and the police found a baggie with cocaine residue in his possession. Respondent stated that this October 2019 arrest resulted in a conviction for harassment against his mother. Respondent was also convicted of resisting arrest as part of the same case. Respondent stated that his 2025 arrest resulted in dismissed charges. The alleged victim in that case was his fiancé, and she was the person who called the police. With regard to Respondent's 2026 arrest for DUI and reckless driving, Respondent was granted d[i]version. Respondent admitted that his BAC was 0.13% and that he had his 16-year-old brother in the car with him when he was arrested.
>
> Respondent has minimal family ties in the United States. He is not married, he has no children, and his parents have no immigration status. While he has 2 United States citizen brothers they are younger than Respondent. Respondent

> works, but he has no work authorization. While he attended school in the United States, he did not graduate. Respondent's sponsor is his girlfriend. While they have been together for three years and have agreed to marry, they apparently have not obtained a marriage license or set a date for their wedding. Moreover, she has called the police on Respondent for domestic violence allegations in the past.
>
> Despite these limited ties and equities, the evidence submitted by DHS indicates that Respondent has a serious criminal history. Most concerning are the crime[s] committed against his mother, the resisting arrest, his use of cocaine in the United States, and the DUI with his younger brother in the car. These are all crimes that indicate that Respondent is a danger to the community and his own family.
>
> Respondent also has very limited relief from removal. His only application for relief from removal is his Form I-589. However, Respondent is likely time-barred from asylum. Respondent's lack of viable relief strongly suggests that he has little incentive to return to court. Respondent is an exceedingly poor bail risk.
>
> For these reasons, the court finds Respondent has not established that he is not a danger to the community or a flight risk. The court therefore denies Respondent's request for bond. The court finds that conditional parole is not appropriate.

*Id.* at 2–4 (internal citations and footnotes omitted).

## II. PROCEDURAL BACKGROUND

Petitioner filed his Petition on August 27, 2026. Dkt. 1. Respondents filed a Return and supporting materials on September 11, 2026. Dkt. 5; Dkt. 6; Dkts. 7, 7-1, 7-2; Dkts. 8, 8-1–8-5. After obtaining leave of court, Dkt. 12, Petitioner filed an out of time Traverse. Dkt. 10.

Thereafter, the Court directed Respondents to submit supplemental filings, including (1) any neutral contemporaneous record of Petitioner's bond proceedings, including any audio recording or transcript of the bond hearing and (2) any written bond memorandum issued by the IJ concerning Petitioner's bond proceedings. Dkt. 13. Respondents timely filed a copy of the IJ's written bond memorandum and a declaration stating that no neutral contemporaneous record of Petitioner's bond proceeding was created. Dkts. 14, 14-1.

Thus, this matter is now fully briefed and ready for consideration by the Court.

//

## III. HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a “violation of the Constitution or laws or treaties of the United States[.]” 28 U.S.C. § 2241(c)(3). “[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody.” *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## IV. DISCUSSION

In his Petition, Petitioner argues that the IJ’s bond determination was arbitrary and an abuse of discretion, that exhaustion of administrative remedies should not be required, and that immediate release is the only appropriate remedy. Dkt. 1. In their Return, Respondents argue that Petitioner should be required to exhaust administrative remedies through the Board of Immigration Appeals (“BIA”) or, in the alternative, that the Court should not render its decision until the IJ’s written bond memorandum is available for review. Dkt. 5.

Upon review of the available record in this case, the Court finds that any prudential exhaustion requirement is appropriately waived. However, the Court finds that Petitioner has not demonstrated by a preponderance of the evidence that habeas relief is warranted based on reviewable error in his immigration bond proceedings.

### A. Prudential Exhaustion

First, even if exhaustion were required, waiver of that requirement is appropriate given the frequently delayed remedies available through the BIA and the comparatively swift relief available via habeas corpus proceedings:

> If Petitioner is correct that [his] detention is unlawful and h[is]immediate release is required, even a successful BIA appeal process is no adequate substitute for the swifter redress available through the habeas writ. A petition for writ of habeas corpus is "entitled by statute to special, preferential consideration to insure expeditious hearing and determination." *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954). This is for good reason: the Constitution cannot abide the prolonged confinement of a person who by law should be at liberty. Therefore, "[t]he application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000).

*Roberts v. Scott*, No. 2:26-CV-01333-TL, 2026 WL 2071146, at *4 (W.D. Wash. July 17, 2026) (last alteration in original); *see also Carbajal Barajas v. Scott*, No. 2:26-CV-04083-JHC, 2026 WL 3535779, at *2 (W.D. Wash. Nov. 17, 2026) ("[C]ourts in this District have repeatedly rejected the Government's argument that the Court should require prudential exhaustion in cases such as this one."). Thus, the Court concludes that the circumstances presented here warrant waiver of any exhaustion requirement.

**B. Merits**

Habeas courts review IJ bond determinations for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 779, 784–85 (9th Cir. 2024); *Anyanwu v. Bondi*, No. 25-cv-995-JLR-MLP, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025*), report and recommendation adopted*, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025). When reviewing a determination for abuse of discretion, a court may not reweigh evidence but may determine whether the IJ applied the correct legal standard. *Martinez*, 124 F.4th at 785 (citing *Wilkinson v. Garland*, 601 U.S. 209 (2024)); *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026) (adding, in more colorful terms, that federal district courts are "not required to countenance a sham" when reviewing discretionary bond determinations).

The following are factors considered by IJs in making discretionary bond determinations:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family

> ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020).

Here, the IJ's decision to deny bond based on dangerousness[2] reflects a meaningful application of the governing legal principles to the individual circumstances of Petitioner's case, not an abuse of discretion. In his written memorandum, the IJ outlined the governing law, identified the evidence submitted, summarized the facts and circumstances of Petitioner's case, and clearly explained the reasoning supporting his dangerousness finding, including how he weighed Petitioner's positive equities against various negative considerations. *See* Dkt. 14-1.

Unlike in other cases warranting the grant of habeas relief, the IJ's dangerousness finding here was not based on the bare fact that Petitioner possessed a criminal record but was instead based on the IJ's meaningful engagement with the particular circumstances of Petitioner's criminal history as required by law. *See, e.g.*, *Gallego Soto v. Hernandez.*, No. 2:26-CV-02557-LK, 2026 WL 3181171, at *5 (W.D. Wash. Oct. 23, 2026) (IJs may abuse their discretion if they deny bond without meaningfully considering the "circumstances surrounding the offense, its recency, or its severity, as required by BIA and Ninth Circuit precedent"); *Salazar- Mendoza v. Scott*, No. 2:26-CV-03243-GJL, 2026 WL 3372038, at *4 (W.D. Wash. Nov. 6, 2026) ("Criminal history…does not automatically provide a rational basis for a bond denial decision.")

---

[2] Because the Court finds that the IJ did not abuse his discretion to deny bond based on dangerousness, it declines to also address whether the IJ permissibly denied bond based on flight risk.

(collecting cases); *Malinga v. Scott*, No. 2:26-CV-03524-GJL, 2026 WL 3453473, at *3 (W.D. Wash. Nov. 13, 2026) ("[T]he mere existence of a recent criminal arrest does not automatically sustain [a] rational dangerousness finding.").

Nor did the IJ base his decision solely on factors that, alone, would be insufficient to sustain a rational bond denial decision—such as limited time, ties, or avenues for relief from removal—or rely on circumstances lacking a rational connection to the risk of danger Petitioner may pose if released. *See, e.g.*, *Morales Urieta v. Scott*, No. 2:26-CV-03701-GJL, 2026 WL 3257336 (W.D. Wash. Oct. 29, 2026); *Jamali v. Hernandez*, No. 2:26-CV-03999-GJL, 2026 WL 3536389 (W.D. Wash. Nov. 17, 2026).

In sum, while Petitioner may disagree with the outcome of his immigration bond proceedings, he has failed to demonstrate that reviewable legal or constitutional errors pervaded his immigration bond proceedings such that he warrants the grant of habeas relief.

## V. CONCLUSION

Accordingly, Petitioner Cristobal Gomez-Cortes' habeas Petition (Dkt. 1) is **DENIED**.

Dated this 23rd day of November, 2026.

Grady J. Leupold
United States Magistrate Judge